IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01405-DME-KLM

KELLY CLARK,

       Plaintiff,

v.

CITY OF BOULDER, COLORADO,
BOULDER POLICE DEPARTMENT, and
WAYLON LOLOTAI, Boulder Police Officer, in his individual capacity,

       Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**(Doc. 11)**

---

In this 42 U.S.C. § 1983 action, Plaintiff Kelly Clark claims that Defendant Waylon Lolotai, a Boulder police officer, violated Clark's Fourth Amendment rights by using excessive force to seize her, and then by unlawfully seizing and citing her for obstructing a police officer without probable cause to do so. Clark further asserts that Officer Lolotai's employer, the City of Boulder (the "City"), violated her constitutional rights by failing to train, supervise, and/or discipline Officer Lolotai.[1]

---

[1] Although Clark also named the Boulder Police Department as a defendant, Defendants contend that the police department is not a separately suable legal entity under Colorado law. Clark now agrees and "does not object to the Court dismissing the Boulder Police Department as a defendant." (Doc. 19 at 13 n.9.)

Defendants have moved for summary judgment. (Doc. 11.) See Fed. R. Civ. P. 56. Relying on the video recordings of the incident in question taken from several officers' body cameras and a camera mounted on the dashboard of one of the police vehicles, Officer Lolotai asserts that he is entitled to qualified immunity because Clark has failed to establish that he violated her clearly established constitutional rights. The City asserts that, if Officer Lolotai did not violate Clark's constitutional rights, then it cannot be liable, either. Agreeing with Defendants, the Court GRANTS them summary judgment on all claims and DISMISSES this action WITH PREJUDICE.

## I. CLARK'S REQUEST FOR DISCOVERY

Defendants moved for summary judgment immediately after Clark filed her complaint. There has, therefore, been no discovery and the discovery process is now stayed. In opposing summary judgment, Clark indicated that, if the Court does "not deny Defendants' motion [for summary judgment] outright, the Court should defer consideration of it until Ms. Clark has had the opportunity to conduct discovery," citing Fed. R. Civ. P. 56(d). (Doc. 19 at 1.) Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion], the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

"To obtain relief under Rule 56(d), the movant must submit an affidavit" or, as in this case, a declaration, "(1) identifying the probable facts that are unavailable,

2

(2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." Cerveny v. Aventis, Inc., 855 F.3d 1091, 1110 (10th Cir. 2017). Clark has not met these requirements.

Clark has not yet had the opportunity to conduct discovery, and she did oppose staying the discovery process. But she was able to submit evidence in opposing summary judgment. Clark has failed to identify what currently unavailable facts she needs to explore that would be relevant to opposing summary judgment.

In her memorandum opposing summary judgment, Clark listed a number of facts that she asserts are disputed and then stated: "If any of the above-claimed facts are relevant to the Court's decision and the Court finds that the video alone does not place them in dispute, the Court should defer Defendants' motion until the close of discovery. Fed. R. Civ. P. 56(d)." (Doc. 19 at 3-4.) But the Court's summary judgment ruling does not turn on any of Clark's listed facts.[2]

Clark also asserted that, after discovery, she

> anticipates hiring a police practices expert who will review the discovery in this case and opine that, considering all of the circumstances, the force Defendant Lolotai used was excessive. If this opinion would be relevant to the Court, the Court should defer considering Defendants' motion [for summary judgment] until the close of discovery.

---

[2] Arguments made only in pleadings opposing summary judgment are not sufficient to invoke Rule 56(d)'s protection. See Cerveny, 855 F.3d at 1110. But Clark later incorporated those arguments into her Rule 56(d) declaration.

3

(Doc. 19 at 4.) But, as explained below, such an opinion would not be relevant to the Court's summary judgment ruling. Nor would the City's relevant policies and customs.

Clark has, thus, failed to make an adequate showing under Rule 56(d) that she needs discovery before she can adequately oppose Defendants' summary judgment motion.

## II. FACTS

The Court, then, will rely on the videos the parties submitted to decide Defendants' summary judgment motion.[3] In doing so, the Court must view this evidence, and draw all inferences therefrom, in the light most favorable to Clark. Scott v. Harris, 550 U.S. 372, 377 (2007).[4]

---

[3] The Court can consider only admissible evidence in deciding whether summary judgment is warranted. See Law Co. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1170 (10th Cir. 2009). "While the party opposing summary judgment need not produce evidence in a form that would be admissible at trial, the content or substance of the evidence must be admissible." Id. (internal quotation marks omitted). Defendants objected that Clark had failed to authenticate any of the exhibits she submitted in opposing summary judgment. See Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 901. Clark responded by authenticating two of her exhibits—Exhibits 1 and 7, which are bystanders' videos of the incident taken on their cell phones—through Clark's sworn declaration. Clark's videos can be further authenticated by comparing them to the Defendants' video exhibits. See Bruins v. Osborn, No. 2:15-cv-00324-APG-VCF, 2016 WL 697109, at *1 n.2 (D. Nev. Feb. 19, 2016) (unreported) ("[V]ideos may be authenticated by their 'appearance, contents, substance, . . . or other distinctive characteristics of the item[s], taken together with all the circumstances,'" quoting Fed. R. Evid. 901(b)(4)); see also, e.g., Tanner v. McMurray, No. CIV 17-0876 JB/KBM, 2019 WL 4740940, at *22 n.165 (D. N.M. Sept. 27, 2019), appeal filed, (10th Cir. Oct. 9, 2019) (No. 19-2166). The Court determines that all the videos submitted have been sufficiently authenticated.

[4] Scott indicates that, in considering a summary judgment motion, the court will accept the non-movant's version of events unless video evidence "clearly" or "blatantly" contradicts" that version. 550 U.S. at 378, 380. Here, the Court does not have Clark's version of the incident in a form that can be considered for summary judgment

At about 2:00 a.m. on July 15, 2018, Boulder police were called to "the Hill," a commercial area near the University of Colorado, by a complaint that someone had stolen money from a tip jar at a fast-food restaurant. Officers—first two, then five, and finally four—struggled to take the non-compliant theft suspect into custody. Eventually officers brought the suspect to the ground and applied restraints. Still, he continued to struggle against the officers.

At the same time, a show was letting out at a nearby concert venue, so there were a number of people in this area. Several bystanders began video recording the officers' struggle to control the theft suspect. Officer Lolotai, who was kneeling on the ground with the theft suspect, ordered one of those individuals recording the incident to get back; that individual complied. Immediately after that exchange, Clark crossed the street and stood, with her hands behind her back, a few feet away from where the officers were struggling with the theft suspect.[5] Officer Lolotai twice ordered Clark to "step back" just before he shoved her back with both hands as he was telling her again

---

purposes. The Court has her complaint, but that is not verified. And generally a party cannot rely on pleadings to defeat summary judgment. See Salehpoor v. Shahinpoor, 358 F.3d 782, 786 (10th Cir. 2004) ("Reference to facial assertions in a complaint are not sufficient to overcome Rule 56 summary judgment when the record as a whole reveals there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). Nor has Clark submit her own sworn affidavit in opposing summary judgment. So the court must simply consider the video evidence in the light most favorable to Clark, as the non-moving party.

[5] Although Clark argues in her memorandum opposing summary judgment that, by this time, the suspect had been fully restrained and brought under control and had stopped resisting arrest, that assertion is contradicted by the video evidence of the incident. See Scott, 550 U.S. at 378, 380.

to step back, causing Clark to become airborne for several feet before falling onto the concrete. The time shown on the videos suggests about three seconds elapsed between the first command by Officer Lolotai to step back and when he shoved Clark backwards, causing her to fall.

After shoving Clark, Officer Lolotai told her twice to "stay away from us," and then told her to "stay back" and "to get over there." (229-2 @ 8:33:52 – 8:33:59.) Officer Lolotai then returned to assisting the other officers in subduing the theft suspect. Two just-arriving police officers stood between Clark and the officers trying to take the theft suspect into custody. One of those officers told Clark several more times to "step back," "move back," give the officers "some space," "we will talk to you shortly," but "now is not the time," and "I need you to leave us alone." (233 @ 8:34:00 – 8:34:50.) Clark stood talking to the officer for less than a minute before moving to the side.

After officers gained better control of the theft suspect, Officer Lolotai detained Clark for something less than fifteen minutes, ten of those minutes in handcuffs, while he wrote her a summons citing her for violating Boulder Municipal Code § 5-5-3, entitled "Obstructing a Peace Officer or Firefighter." The City later dismissed that charge.

### III. OFFICER LOLOTAI'S QUALIFIED IMMUNITY DEFENSE

Officer Lolotai contends that he is entitled to qualified immunity on Clark's three claims asserted against him, alleging that Officer Lolotai violated the Fourth Amendment when he used excessive force against Clark and then falsely arrested and maliciously prosecuted her for obstructing a police officer. To overcome this qualified immunity defense, Clark must establish both that Officer Lolotai violated her constitutional rights

6

and that any constitutional violation was clearly established at the time of this incident, July 2018, such that a reasonable officer in Lolotai's position would have understood that his conduct was unconstitutional. See McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019).

**A. Excessive force**

Clark alleges that Officer Lolotai used excessive force, in violation of the Fourth Amendment's protection against unreasonable seizures, when he shoved Clark. Clark failed to establish such a Fourth Amendment violation because Officer Lolotai was not trying to seize Clark, for Fourth Amendment purposes, when he shoved her. He was, instead, trying to move her out of the way of officers trying to arrest the theft suspect. After shoving Clark, Officer Lolotai told her again to step back and to leave "them" alone, and then he returned to helping control the theft suspect. The two officers who then stood between Clark and the ongoing scene of the arrest did not try to seize Clark, either. Instead, they told her to back up, give them space, and leave them alone. Officer Lolotai's act of shoving Clark, then, was not a seizure for Fourth Amendment purposes. See Clark v. Edmunds, 513 F.3d 1219, 1221-22 (10th Cir. 2008) (holding officer's shoving bystander out of his way as he was leading a detained individual out of a house was not a Fourth Amendment seizure because "[t]he Sheriff only intended to remove Plaintiff from his path to the door; he did not intend to acquire physical control

7

over her"). Officer Lolotai is, therefore, entitled to qualified immunity on Clark's excessive force claim because she failed to establish an unconstitutional seizure.[6]

**B. Unlawful seizure and malicious prosecution**

Clark also alleges that Officer Lolotai violated the Fourth Amendment when he subsequently unlawfully seized her and detained her in handcuffs, and when he maliciously initiated her prosecution for obstructing a police officer in violation of Boulder Municipal Code § 5-5-3(b). That code provision states:

> No person, upon being ordered by a peace officer to move to a distance of eight feet from the police officer, or to a specific place which is no more than eight feet from the officer, while the officer is investigating what the officer reasonably suspects is a crime or violation of this code, is interviewing a suspect or potential witness, or is making an arrest, shall fail to comply with such order.

Clark has failed to establish a constitutional violation under either of these claims because Officer Lolotai had probable cause to detain and charge Clark with violating this Boulder municipal code provision. See Nieves v. Bartlett, 139 S. Ct. 1715, 1726 & n.2 (2019) (indicating that existence of probable cause will defeat § 1983 claims for malicious prosecution and false arrest).

Probable cause for the arrest was not created by Officer Lolotai telling Clark twice to step back just before he shoved her. Because those two commands occurred almost simultaneously with the shove, Clark did not have time to comply. Thus, Officer

---

[6] In Clark, the court went ahead and analyzed the bystander's excessive force claim under the Fourteenth Amendment's substantive due process clause, rejecting the merits of such a claim because the sheriff's conduct in shoving the bystander did not shock the conscience. See 513 F.3d at 1222-23. In this case, Clark has not suggested that the Court consider her excessive force claim under the Fourteenth Amendment or any other amendment. But Clark's claim would also fail a conscience-shocking test.

8

Lolotai did not have probable cause to believe that Clark had failed to comply with his two commands to "step back."  See Burnett v. Bottoms, 368 F. Supp. 2d 1033, 1038-40 (D. Az. 2005) (stating that, if the officer "had no prior interactions with Plaintiff where she had disregarded his orders, as Plaintiff has testified, and ordered Plaintiff arrested immediately after telling her not to cross the street without giving her an opportunity to comply with the order, there would not have been probable cause to support her arrest" for failure to obey a police officer's lawful order); see also Barham v. Ramsey, 434 F.3d 565, 572-77 (D.C. Cir. 2006); Tillis v. City of Minneapolis, No. 12-324 ADM/TNL, 2013 WL 6062187, at *7 (D. Minn. Nov. 18, 2013) (unreported); Mesa v. City of New York, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *13 (S.D. N.Y. Jan. 3, 2013) (unreported).

But following the push, Clark, in Officer Lolotai's presence, failed to comply with the other officer's commands to get back and give the arresting officers some space. That was sufficient to give an objectively reasonable officer in Lolotai's position probable cause to believe Clark had violated § 5-5-3(b).  See Donahue v. Wihongi, — F.3d —, 2020 WL 370188, *4, *6 (10th Cir. Jan. 17, 2020) (stating, in addressing § 1983 claim for unlawful arrest, that "courts assess probable cause 'from the standpoint of an objectively reasonable officer' under the totality of the circumstances" (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

Clark asserts that § 5-5-3(b) proscribes failing to comply with an order specifically directing a person to "to move to a distance of eight feet from the police officer, or to a specific place which is no more than eight feet from the officer."  But Clark does not cite, and the Court has not found, any case law interpreting or applying this provision of

Boulder's municipal code in the manner for which she argues.  See generally Youbyoung Park v. Gaitan, 680 F. App'x 724, 732-36 (10th Cir. 2017) (unpublished) (looking to state courts' interpretation and application of state statute in order to determine whether probable cause existed to arrest).  Even if state courts in the future decide to apply this ordinance only when officers explicitly direct the person to retreat eight feet from the officer, or specifically direct the person to retreat to a particular location, instead of directing the person to "get back" or "step over there," such an application is not yet clearly established.  See id. at 736-38.  In light of that, Officer Lolotai had at least arguable probable cause to believe that Clark had violated § 5-5-3(b).  Therefore, Officer Lolotai is entitled to qualified immunity from both Clark's false-arrest and malicious-prosecution claims.[7]  See Patel v. Hall, 849 F.3d 970, 982 (10th Cir. 2017) ("Officers are immune from any suit arising from an allegedly unlawful arrest if there was 'arguable probable cause' to arrest the plaintiff.").

## IV. THE CITY IS ALSO ENTITLED TO SUMMARY JUDGMENT

Lastly, Clark asserted a § 1983 claim against the City for failing to train, supervise, and/or discipline Officer Lolotai.  But, because the Court has concluded that

---

[7] Qualified immunity protects a state actor only from liability for money damages.  See Morse v. Frederick, 551 U.S. 393, 400 n.1 (2007).  Clark also sought declaratory, injunctive, and "other appropriate equitable relief."  (Doc. 1 at 20.)  But, because Clark has failed to establish that Officer Lolotai violated the Fourth Amendment, she is not entitled to equitable relief against him either.  Clark does not argue otherwise.

the officer committed no constitutional violation, the City is also not liable under § 1983.[8] See Donohue, 2020 WL 370188, at *3, *15.

## V. CONCLUSION

For the foregoing reasons, the Court

- DISMISSES Defendant Boulder Police Department as a party;

- DENIES Clark's Fed. R. Civ. P. 56(d) motion to defer ruling on summary judgment until after discovery;

- GRANTS Defendants Lolotai and the City summary judgment on all claims; and

- DISMISSES this case WITH PREJUDICE.

The clerk shall issue the judgment.

Dated this __7th__ day of _____February____, 2020.

BY THE COURT:

*s/ David M. Ebel*
_____
U. S. CIRCUIT COURT JUDGE

---

[8] The Court ruled that it was not clearly established that, under the Boulder municipal ordinance, an officer had specifically to order a person to retreat eight feet or to a specific location no more than eight feet from the officer, before the person's non-compliance violated § 5-5-3(b). That would not necessarily preclude a claim challenging any policies that the City had for applying the ordinance. See Pyle v. Woods, 874 F.3d 1257, 1264-65 (10th Cir. 2017). But Clark never makes that argument in opposing summary judgment on her § 1983 claim against the City.

11